UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JERMAINE JEFFERSON | CIVIL ACTION |
| VERSUS | NO. 15-240 |
| WEEKS MARINE, INC., ET AL | SECTION "L" |

## ORDER & REASONS

Before the Court is a motion for summary judgment filed by Defendants, Weeks Marine, Inc, ("Weeks") and Atlantic Sounding Co., Inc. ("Atlantic"), seeking dismissal of Plaintiff's claims on the ground that Plaintiff does not qualify as a seaman under the Jones Act. Having reviewed the parties' briefs and the applicable law, the Court now issues this Order & Reasons.

### I.  BACKGROUND

This case arises out of injuries allegedly sustained by Jermaine Jefferson ("Plaintiff") on December 14, 2014, while he was employed by Atlantic, a wholly-owned subsidiary of Weeks aboard the barge Weeks No. 163, a vessel owned by the Defendant Weeks. (R. Doc. 1 at 2).

Plaintiff was hired by Atlantic, and placed in the position of deckhand on the dredge BORINQUEN. (R. Doc. 29-2). Plaintiff commenced employment on the dredge BORINQUEN as a deckhand on August 31, 2009. (R. Doc 29-3 at 29:24-30:17). Plaintiff worked on the BORINQUEN for three months. *Id.* at 32:14-16. Plaintiff was then assigned to Week's Houma yard. *Id.* at 32:17-23.

Plaintiff transferred to Weeks' Houma yard on December 21, 2009. (R. Doc. 29-5). After being assigned to Weeks' Houma yard on December 3, 2009, Plaintiff was never assigned to a vessel, whether as a member of its crew or otherwise. (R. Doc. 29-7). According to Plaintiff's

payroll documents, Plaintiff spent 82 days on the dredge BORINQUEN in 2009, and 1,268 days in Weeks' Houma yard between 2009 and 2014.

Following his transfer from the BORINQUEN, Plaintiff recalled two occasions during which he reported to work at a location other than Week's Houma yard: (1) three weeks working on a barge fixing pipes (R. Doc. 29-3 at 37:2-41:23) and (2) two weeks in Florida moving pipes because of the oil spill. *Id.* at 42:12-43:8.

When Plaintiff worked out of Weeks' Houma yard, he would work on land or in a boat. *Id.* at 44:15-45:12. There were days when Plaintiff would stay on land and work in Weeks' Houma yard for the whole twelve hour work day. *Id.* at 46:18-47:7. Plaintiff estimated that, in 2014, he worked 30% of the time somewhere other than on land while assigned to Weeks' Houma yard. *Id.* at 47:21-48:4.[1] This 30% estimate includes time he spent working on barges and dredges that were moored at the time Plaintiff worked on them. *Id.* at 50:18-51:11.

On the date of the accident, Plaintiff was part of a crew assigned to load various items of scrap mental onto the Weeks No. 163 at Weeks' Houma yard. Plaintiff was instructed by his supervisor to board the Weeks No. 163 and unhook items as they were placed aboard the barge by a crane. A considerable amount of material had already been loaded on the barge before Plaintiff went aboard. As Plaintiff was attempting to make his way across the cluttered deck of the barge to unhook the approaching load, a large metal beam placed on a stack of pipe shifted and struck Plaintiff in the leg. In his Complaint, Plaintiff asserted that at the time of the accident he was performing work of a maritime nature such that he is entitled to the benefit of laws providing protection to seaman, including the Jones Act and the General Maritime Laws of Unseaworthiness and Maintenance and Cure.

---

[1] Plaintiff cannot provide an estimate for the amount of time he worked on land versus water for the years 2010, 2011, 2012, and 2013. *Id.* at 64:2-6; 67:19-68:7.

2

Defendants assert that Plaintiff does not qualify for seaman status, and thus cannot maintain his three pending causes of action. Thus, Defendants now move for summary judgment, denying seaman status.

## II. APPLICABLE LAW

### a. Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398 (5th Cir.2008).

Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. When the moving party has met its Rule 56(c) burden, "[t]he non-movant cannot avoid summary judgment ... by merely making 'conclusory allegations' or 'unsubstantiated assertions.'" *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir.2002) (quoting *Little*, 37 F.3d at 1075). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot

defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little,* 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta,* 530 F.3d at 399.

### b. Standard for Establishing Seaman Status

The Jones Act provides that "[a] seaman injured in the course of employment ... may elect to bring a civil action at law, with the right of trial by jury, against the employer." 46 U.S.C. § 30104. The Jones Act does not define the term "seaman," therefore, courts have been left to determine exactly which maritime workers are entitled to the special protections that the Jones Act provides. *See Chandris v. Latsis,* 515 U.S. 347, 354 (1995). The Supreme Court has determined that seaman status requires: (1) that the employee's duties contribute to the function of a vessel in navigation (or identifiable group of vessels) or to the accomplishment of its mission and (2) that the connection be substantial in terms of both its nature and duration. *See Chandris,* 515 U.S. at 368. The parties here do not dispute that Plaintiff's duties contributed to the function of a vessel in navigation. The parties, however, disagree about the second prong of that test.

The "substantial connection" inquiry includes a temporal element. *Chandris,* 515 U.S. at 371. In *Chandris,* the Supreme Court adopted the Fifth Circuit's "rule of thumb": "[a] worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." *Id.* The Court warned, however, that this figure is a "guideline" and that "departure from it will certainly be justified in appropriate cases." *Id.* The Court must still examine the "total circumstances of an individual's employment" to determine "whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time." *Id.* at 369.

### III. ANALYSIS

In the present case, Plaintiff had two distinct assignments while employed by Atlantic: (1) deckhand on the dredge BORIQUEN from August 31, 2009 to December 21, 2009; and (2) deckhand[2] at the Weeks' Houma yard from December 2009 through the date of his injury. Plaintiff contends that the undisputed testimony provided by him in his deposition testimony reveals that during calendar 2014 his work assignment changed in that he was newly engaged in building "pipe rafts." (R. Doc. 32 at 5).

When a maritime worker's basic assignment changes, his seaman status may change as well. *Chandris*, 515 U.S. at 372. The Supreme Court spoke of examples such as an office worker being reassigned to a vessel in a classic seaman's job, or a worker transferred to a desk job in the company's office. *Id.* If an employee receives a new work assignment in which his essential duties are changed, he is entitled to have the assignment of his vessel-related work made on the basis of his activities in his new position. *Id.* It is undisputed that Plaintiff's work assignment changed significantly in 2009 when he was transferred from working as a deckhand on the dredge BORINQUEN to work in the Houma yard. Additionally, it is the Plaintiff's position that he had a second significant change of assignments in 2014 when he was required to participate in the "pipe raft" project. Thus, the question before the Court is what period of time should be examined when determining whether the temporal element required for seaman status has been met: the entire period of time when he assigned to the Houma yard or calendar year 2014.

---

[2] While Plaintiff's "Employment Status Change Authorizations" reference the position of deckhand in regards to his transfer to Weeks' Houma yard, this title has no bearing on his work duties when he was assigned to Weeks' Houma yard. (R. Doc. 29-7).

5

In support of his argument that only 2014 should be considered, Plaintiff cites a Fifth Circuit decision, which approved the use of a one-year time period for analysis of a seaman's substantial connection to a vessel or vessels. In *Mudrick v. Cross Equipment Ltd.*, 250 F.App'x 54, 58-59 (5th Cir. 2007), the Fifth Circuit noted:

> To establish this substantial connection, Cross offered the mediation position statements of the Decedent's wife, his estate, and CISPRI conceding that the Decedent was a Jones Act seaman. Cross also submitted the Decedent's job description, and his hand-written time sheets for the year leading up to his accident. With the time sheets, Cross submitted a memorandum from a CISPRI manager explaining that the Decedent's supervisor had reviewed the time sheets and, with special knowledge of the Decedent's assignments and the hours necessary to complete them, determined that the Decedent spent thirty-two percent of his time performing marine work aboard CISPRI vessels in navigation. This calculation is supported by the raw time and task data provided by the Decedent.

*Id.* However, Plaintiff's reliance on *Mudrick* is misplaced.

The defendants in *Mudrick* argued that one year's worth of time sheets was *insufficient* to fulfill the requirement that the court determine seaman status based on the maritime worker's "entire employment history," citing *Barrett v. Chevron, U.S.A., Inc.* 781 F.2d 1067, 1075 (5th Cir. 1986)(en banc). *Id.* at n.2. In response to this argument, the court distinguished *Barrett*:

> Unlike the plaintiff in *Barrett* who tried to establish seaman status based on a snapshot of eight days out of one year of employment, *id.* at 1074–75, Cross proffered time sheets for one year of the Decedent's twenty-three-month employment history as an OST working exclusively for CISPRI with CISPRI equipment and on CISPRI vessels. As opposed to eight days out of a year's employment, one year's time sheets are sufficient to satisfy the flexible requirement that we examine the Decedent's entire employment history to determine his status as a Jones Act seaman.

*Mudrick*, 250 F.App'x at n. 2.  In the instant matter, the issue is not whether one-year's worth of work history is enough; rather, the issue is whether the Plaintiff's work building pipe rafts in 2014 constitutes a significant change in his employment assignment. The standard (unless there

6

has been a significant change in employment assignment) is the "entire employment history." In *Mudrick*, it was undisputed that the decedent has been employed in the same assignment for his entire employment.

Here, the Court is not persuaded that Plaintiff's basic assignment changed—so as to affect his seaman status—when he began work building pipe rafts. Rather, his work building pipe rafts was merely another task of his employment at Weeks' Houma yard. Unlike in 2009 when Plaintiff transferred from the dredge to the yard, in 2014, Plaintiff was neither assigned a new work location nor did he receive an "employment status change authorization."

Because the Court finds that Plaintiff did not have a significant change of assignments in 2014, the Court applies the 30 percent temporal analysis articulated in *Chandris* to the entire five year period when he was assigned to Weeks' Houma yard. Upon doing so, the evidence reveals that Plaintiff spent 8.44% of his time in service of a vessel or a vessel while working at Weeks' Houma yard. This includes: (1) the three weeks he spent working on a barge fixing pipes; (2) the two weeks he spent in Florida moving pipes because of the oil spill; and (3) his estimate that he spent 30% of his time in 2014 working in service of a vessel. Thus, Plaintiff cannot prove a connection to a vessel in navigation (or an identifiable group of vessels) that is substantial in terms of its duration. Accordingly, Plaintiff fails to satisfy the second prong of *Chandris'* seaman-status test and the Court finds, as a matter of law, that the Plaintiff was not a Jones Act seaman.

Additionally, the present motion seeks a Judgment from the Court holding that any putative claims Plaintiff might assert under 33 U.S.C. § 905(b) are baseless in light of *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156 (1981). The Plaintiff concedes that should

the Court find him not entitled to bring claims as a seaman, then his potential claims under 905(b) of the Longshore Act are also not viable.

### IV. CONCLUSION

Considering the foregoing, **IT IS ORDERED** that the Defendants' Motion for Summary Judgment (R. Doc. 29) is **GRANTED** and Plaintiff is not entitled to assert any of his currently pleaded Jones Act negligence, unseaworthiness, and maintenance and cure causes of action.

Additionally, while not pleaded, Plaintiff cannot present any evidence that creates a genuine issue of material fact that supports the finding that Defendant Weeks Marine, Inc. breached any of the three duties it owed to Plaintiff at the time of his accident.

New Orleans, Louisiana this 3rd day of February, 2016.

_____
United States District Judge